
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 20, 2016

**STEVE DUCLAIR v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County**
**No. C64525     R. Jerry Beck, Judge**

**No. E2016-00856-CCA-R3-PC**

The petitioner, Steve Duclair, appeals the denial of post-conviction relief from his 2011 Sullivan County Criminal Court jury convictions of the sale and delivery of .5 grams or more of cocaine and the sale and delivery of .5 grams of more of cocaine within a drug-free school zone, for which he received an effective sentence of 15 years.  In this appeal, the petitioner contends only that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

David S. Barnette, Jr., Kingsport, Tennessee, for the appellant, Steve Duclair.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Sullivan County Criminal Court jury convicted the petitioner of two counts of the sale of .5 grams or more of cocaine, two counts of the delivery of .5 grams or more of cocaine, one count of the sale of .5 grams or more of cocaine in a drug-free school zone, and one count of the delivery of .5 grams or more of cocaine in a drug-free school zone.  The trial court merged the alternative counts and imposed an effective 15-year sentence.  This court affirmed the convictions on direct appeal.  *See State v. Steve Duclair*, No. E2012-02580-CCA-R3-CD (Tenn. Crim. App., Knoxville, Apr. 23, 2014), *perm. app. denied* (Tenn. Oct. 16, 2014).

In *Steve Duclair*, this court stated the facts of the case as follows:

      In early 2008, Lisa Thompson was contacted by local authorities about becoming a confidential informant. Ms. Thompson, at the time, was selling cocaine out of her home to support her own addiction to the drug. The home was located next door to Holston View Elementary School in Bristol, Tennessee.

      Ms. Thompson agreed to plead guilty to selling cocaine and possession of drug paraphernalia in exchange for future cooperation as a confidential informant. As a result, she received a suspended sentenced of three years, to be served on probation for six years. Ms. Thompson cooperated fully with authorities, providing assistance with over 100 cases for both the Sullivan County and Bristol vice squads. Among these transactions were three controlled purchases from [the petitioner].

      On March 11, 2008, Ms. Thompson called [the petitioner] two times, attempting to buy drugs. The calls were recorded. [The petitioner] called her back and indicated that he would bring the drugs to her house. Ms. Thompson was supplied with $200 by the police. The transaction was videotaped. [The petitioner] came to the house; Ms. Thompson gave him the $200 in exchange for cocaine weighing 1.3 grams.

      On March 19, 2008, Ms. Thompson called [the petitioner] trying to purchase cocaine. The police again provided her with $200. The transaction was videotaped. On this occasion, Detective Dennis Lee Ford, Jr. hid in Ms. Thompson's living room. [The petitioner] again came to the residence and exchanged a package of cocaine with Ms. Thompson for the $200. The cocaine in this instance also weighed in at 1.3 grams.

      At some point after the March 19 incident, [the petitioner] called Ms. Thompson to notify her that he had a new telephone number. On August 15, 2008, Ms. Thompson made a phone call to [the petitioner]. The call was recorded.

Ms. Thompson told [the petitioner] she was looking for a "bill," slang for $100 worth of cocaine. Ms. Thompson was wired with video equipment during this transaction. For some unexplained reason, the equipment failed. [The petitioner] provided Ms. Thompson was .6 grams of cocaine on this occasion in exchange for the $100.

Ms. Thompson's home was located within 1,000 feet of Holston View Elementary School in Bristol, Tennessee.

. . . .

At trial, [the petitioner] stipulated that the sale or delivery of cocaine occurred within 1,000 feet of Holston View Elementary School.

On December 19, 2014, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on March 29, 2016.

At the evidentiary hearing, trial counsel testified that, during the course of his representation, he and the petitioner communicated a "tremendous amount." Trial counsel explained that the petitioner was out on bond prior to trial and that counsel spoke with the petitioner and his family members "constantly" about the case. Trial counsel provided the petitioner with all of his discovery materials, and the two met and discussed the video recordings.

With respect to plea negotiations, trial counsel testified that the State offered the petitioner an eight-year sentence, which the petitioner declined. Trial counsel stated that he discussed possible defenses with the petitioner and that the petitioner agreed with counsel's strategy of arguing to the jury that the petitioner "should receive no more time than [Ms. Thompson] did for the same act." Counsel explained that he would present to the jury the "situation where it looked like she was receiving [a] benefit because she was a white woman and – and he didn't receive any because he was a black man." Trial counsel conceded that he and the petitioner had discussed the possibility of an entrapment defense:

And I explained to him what entrapment was, what you had to prove, how difficult it was. But I also told him that if he wanted to do that, we would do that. But there was

- 3 -

one major problem with that, and that was that they had a recording where he had spoken with this lady about selling to her in Virginia. And he knew that. I mean, it wasn't . . .

It was a recording that the State had. If – if I had raised entrapment, then they would have brought that recording in here, and we wouldn't have had a shot.

Trial counsel further explained that this recording would have been "relevant to [the petitioner's] prior disposition to sell cocaine." Trial counsel also testified that the audio and video recordings of the conversations between Ms. Thompson and the petitioner "were very clear that that was [the petitioner], that there was absolutely no question as to why he was there or what he was doing."

Trial counsel stated that he had difficulty overcoming the petitioner's having given Ms. Thompson his new cellular telephone number, noting that the count related to the August cocaine sale was the "only count we lost," meaning it was the only count in which the jury found the petitioner guilty as charged. Trial counsel testified that his "whole hope" was "to try to get this down to a probatable sentence," which he was "able to do that on two counts" but was "not able to do it on the third count." Trial counsel stated that, although he was unable to make a true jury nullification argument, "you can sure kind of skirt around the edges" and he "almost pulled it off."

When questioned about his admission to the jury that the petitioner had sold the cocaine to Ms. Thompson, trial counsel acknowledged having done so, stating as follows:

I had seen the videos. And I think it's very important to – not to lie to a jury right off the bat. I mean, there's no question that [the petitioner] was the gentleman in the video, and he was also the gentleman seated beside me at trial. And I – one thing I've learned is you need to try to engender trust from the jury as soon as possible, so you better be honest with them.

Trial counsel acknowledged that he had discussed this strategy with the petitioner:

I told him, I said, "Steve, you know, we got to admit it. It's on tape. I mean, we can't deny it. They got – they got us." I can't make him look any different than what he is.

. . . .

I – my recollection, there's one [video] that I recall didn't show a hand-off. I think [it] showed a movement and money.

As I said, [the petitioner] was not talkative [on the videos] at all. And there was no discussion other than the audio that was in front of the jury which, quite frankly, any reasonable person would assume that was a drug transaction.

But I want to make it perfectly clear that there's no question I – I didn't have an entrapment defense because my client had already stated that I sold – you know, that they sold in Virginia and he wanted her to come over there and she wouldn't do it. And he came to Tennessee.

When I say "Virginia," it was Bristol, Virginia.

Trial counsel also testified that the petitioner had made the decision not to testify at trial.

On cross-examination, trial counsel admitted that he was aware that the petitioner knew Ms. Thompson because "she had purchased cocaine from him on multiple occasions before she began working for the police." Trial counsel acknowledged that, with respect to the March drug transactions, he had been successful "getting this school zone [charge] dropped" or "not found by the jury," but that he had not been so fortunate with the August transaction because the petitioner had contacted Ms. Thompson to give her his new telephone number. Trial counsel conceded that he was also aware that, when the petitioner was arrested in December 2008, officers found "a substantial amount of cocaine" in his residence and nearly $2,000 in cash, which would have "open[ed] the door to the State's being able to show that this man had cocaine on other occasions" had trial counsel attempted to argue entrapment.

Trial counsel testified that he had been practicing law for approximately 40 years and that 98 percent of his practice was devoted to criminal law, having tried "many, many jury trials in which individuals were charged with selling drugs." Trial counsel tried to convince the petitioner to accept the offer of eight years, cautioning the petitioner that a trial was "'not going to turn out good,'" but the petitioner, after speaking with his family members, informed trial counsel that he wanted to proceed to trial. Because trial counsel knew he could not effectively argue that the petitioner did not sell drugs to a

person whose house was located next door to a school, he "simply tried to get the jury to cut [the petitioner] the same benefit that the State had cut Ms. Thompson based upon her cooperation."

The petitioner testified that he had met with trial counsel "on numerous occasions" and that trial counsel had provided him with all discovery materials, including the video recordings, but that counsel never viewed the video recordings with him. The petitioner explained that he had met Ms. Thompson through a mutual friend named "Sheila" and that he had asked trial counsel to find Sheila. According to the petitioner, trial counsel either stated that "she can't be found or nobody knew where she" was. When the petitioner broached the topic of an entrapment defense, trial counsel simply replied with a "cut-and-dry, 'no,'" with "[n]o explanation, no anything." The petitioner brought up entrapment a second time, and trial counsel again dismissed it immediately. The petitioner testified that, although trial counsel never used the term "jury nullification," counsel intended to "appeal to the sensibility of the jurors" and "was going to bring up the fairness issue." The petitioner testified that he had no prior drug convictions.

Although the petitioner could not recall Sheila's last name at the time of the hearing, he stated that he knew it at one time and that he had provided trial counsel with her last name. The petitioner insisted that he did not recall ever contacting Ms. Thompson to give her his new telephone number. He also testified that when Ms. Thompson called him on March 15, she was "harassing" him to provide her with cocaine, which caused him to question why the defense of entrapment would not have been available to him.

On cross-examination, the petitioner explained that the $1,920 which officers found at the time of his arrest was cash that he had received from "a car accident" and that the cocaine found at his residence did not belong to him. The petitioner admitted that, during the time of the March and August drug transactions, he was not gainfully employed.

The petitioner conceded that, on each of the three occasions at issue, he drove to Ms. Thompson's residence, walked into her home, and took her money in exchange for his cocaine. The petitioner insisted that he "was doing [Ms. Thompson] a favor" because she and Sheila were friends. The petitioner also admitted that he had sold cocaine to Ms. Thompson on one occasion in Bristol, Virginia and that Sheila was not around on that occasion either. When asked if he had participated in selling cocaine, the petitioner responded thusly:

I've given Lisa Thompson cocaine and she's given me money which gives the appearance that I'm a drug dealer. So I can't say, "Yes, I've sold," 'cause that just gives the impression that I've – I'm a – I'm a drug dealer, that I'm selling drugs to her.

With this evidence, the post-conviction court denied relief, finding that "there [was] not even a suggestion that [the petitioner] was entrapped" and that it appeared that trial counsel "selected a proper theory and trial strategy." The court noted that trial counsel's "strategy was to attack [Ms. Thompson] and the deal she had got[ten] for her cooperation" and that, "[a]lthough jury nullification is not a recognized defense," trial counsel's efforts in that regard "appeared to be successful in part considering the jury's split verdicts in regard to" finding the petitioner guilty of only one count of selling cocaine in a drug-free school zone. The post-conviction court stated that it would have been difficult to rely on an entrapment defense when, prior to the final drug transaction, "the petitioner called [Ms. Thompson], gave her his new phone number and told her to call him if she needed anything." The post-conviction court ultimately concluded that the petitioner had "failed to establish a prima facie case of entrapment" and had "failed to establish by clear and convincing evidence that he [was] entitled to post-convict[ion] relief."

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to raise the defense of entrapment and by admitting to the jury that the petitioner had sold cocaine to Ms. Thompson. The State contends that the court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via

facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. Trial counsel testified – and the trial court implicitly accredited his testimony – that he had advised the petitioner against pursuing an entrapment defense because of the extreme difficulty of proving such a defense, given the video recording evidence. Moreover, trial counsel was aware that if he tried to prove that the petitioner had been entrapped, the State would have been free to introduce into evidence the recording of the petitioner's prior sale of cocaine to Ms. Thompson in Bristol, Virginia, which would have severely undercut the petitioner's position that he was not predisposed to sell narcotics.

Finally, the fact that the petitioner had provided Ms. Thompson with his new cellular telephone number after twice engaging in video-recorded drug transactions with her belied his contention that he had been "harass[ed]" into selling cocaine to Ms. Thompson and further weakened any possible entrapment defense. Likewise, trial counsel's decision to tell the jury during opening statement that the petitioner had "sold, on three occasions, cocaine to" Ms. Thompson was based on his belief that it was best to "be honest with" the jury in the hope of appealing to the jurors' sense of fairness. We will not second-guess these reasonable trial strategies and tactical decisions. *See Adkins*, 911 S.W.2d at 347. Furthermore, given the substantial evidence against the petitioner, he cannot establish that, but for counsel's alleged errors, the outcome would have differed. *See Strickland*, 466 U.S. at 694. As such, we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE